# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN ARNOLD et al., *on their own behalves and on behalf of all those similarly situated*, | Civil No. 20-2082 (JRT/ECW) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| LME, INC., ROGER D. WILSEY, SR., and SHARI K. WILSEY, | |
| Defendants. | |

Joshua Paul Wunderlich, **CORNERSTONE LAW FIRM**, 5821 Northwest Seventy-Second Street, Kansas City, MO 64151; and Marshall H. Tanick, **MEYER NJUS TANICK PA**, 330 Second Avenue South, Suite 350, Minneapolis, MN 55401, for plaintiffs.

Paul Shapiro, **TAFT STETTINIUS & HOLLISTER LLP**, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for defendants.

Plaintiffs allege that Defendants—LME, Inc. ("LME"), and Roger and Shari Wilsey (the "Wilseys")—violated the Worker Adjustment and Retraining Notification ("WARN") Act by not providing sufficient notice before shuttering LME's doors and leaving Plaintiffs out of work. The Wilseys ask the Court to dismiss the action, arguing that Plaintiffs fail to plausibly allege that the Wilseys are alter egos of LME and therefore fail to state a plausible claim to relief, as the WARN Act does not provide a cause of action against individuals unless they are alter egos of a corporation.

At the pleading stage, a complaint need only make allegations that suffice to put defendants on notice that a veil-piercing theory is being asserted and that, if true, would establish liability. Because Plaintiffs' Amended Complaint accomplishes both, the Court will deny Defendants' Motion.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. The Parties

LME is a motor carrier company incorporated and based out of Minnesota. (*See* Am. Compl. ¶ 8, Aug. 6, 2019, Docket No. 3.) The Wilseys are husband and wife, who at all relevant times have directly owned LME, individually or jointly, and served as its officers. (*Id.* ¶ 14.)

On July 11, 2019, LME notified its employees that it was closing all of its terminals the next day, allegedly in violation of the WARN Act, as the Act requires that 60-day notice be given before such a closing. (*Id.* ¶¶ 2–3; *see also* 29 U.S.C. § 2102.) Plaintiffs are former LME employees seeking back pay and lost benefits for a period of up to 60 days following LME's closing. (Am. Compl. ¶¶ 15–35, 85; *see also* 29 U.S.C. § 2104.)

#### B. Alter-Ego Allegations

Plaintiffs allege that the Wilseys are alter egos of LME, as LME "is within the complete control of its owners," the Wilseys, and that "the conduct alleged [in the Amended Complaint] is fraudulent to such an extent that equity requires piercing the

corporate veil to extend liability beyond [LME] and onto its individual owners." (Am. Compl. ¶ 5; *see also id.* ¶ 76 ("[LME] was at all relevant times under the complete control of the Wilseys.").) Plaintiffs also allege that "the Wilseys exercised a complete domination of [LME's] finances, policy, and business practice" in order to "close the doors of [LME's] terminals and put Plaintiffs and its other employees immediately out of work without giving them proper notice pursuant to the WARN Act." (*Id.* ¶¶ 78–79.)

Additionally, Plaintiffs assert that LME "failed to observe corporate formalities, had its funds siphoned by its dominant shareholders, had nonfunctioning officers, and was merely a façade for the Wilseys' individual dealings." (*Id.* ¶ 77.) As such, according to Plaintiffs, "[a]n element of injustice or fundamental unfairness exists in shielding the Wilseys from liability." (*Id.* ¶ 80.)

Finally, Plaintiffs reference a National Labor Relations Board ("NLRB") order from April 2019, which directed LME to pay over $1 million in back pay to employees of Lakeville Motor Express ("Lakeville"), another company owned and operated by the Wilseys that was similarly closed without 60-day notice being given. (*Id.* ¶¶ 44–45.) The NLRB also ordered LME to cease and desist from "[c]reating alter-egos for purposes of avoiding its responsibilities and obligations under the National Labor Relations Act." (Ex. 3 at 13, Nov. 11, 2020, Docket No. 30-2.)[1] Former Lakeville employees have also accused

---

[1] As a matter of public record, which is also necessarily embraced by the Amended Complaint, the Court may properly consider the NLRB Decision and Order. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

LME of transferring a portion of its operations after its closure to another motor carrier business, Finish Line Express, which regularly used LME facilities, continued servicing LME's customers, and was nominally owned and controlled by "another officer of [LME]" after LME's closure. (Am. Compl. ¶¶ 47–51.)

## II. PROCEDURAL HISTORY

On July 16, 2019, Plaintiffs initially filed this action in the Western District of Missouri, (Compl., July 16, 2019, Docket No. 1), and then filed an Amended Complaint on August 6, 2019, alleging that Defendants violated the WARN Act and seeking certification of a class of others similarly situated, (Am. Compl. ¶¶ 52–86.) In response, the Wilseys filed a Motion to Dismiss, or, alternatively, to Transfer Venue. (1st Mot. Dismiss, Sept. 4, 2019, Docket No. 7.)

The Missouri court provisionally denied the Motion, as it found that it did not have enough information to determine whether it could exercise personal jurisdiction over the Wilseys, a question which the court had to determine first before considering whether Plaintiffs could pierce the corporate veil to state a claim against the Wilseys. (Order at 7, 13, Sept. 22, 2020, Docket No. 15.) The court then granted the Wilseys' request to transfer the action to the District of Minnesota. (*Id.* at 12–13.)

On September 30, 2020, the action was transferred to the District of Minnesota. (Transfer Order, Sept. 30, 2020, Docket No. 17.) On October 21, 2020, the Wilseys filed a

second Motion to Dismiss pursuant to Rule of Civil Procedure 12(b)(6). (2nd Mot. Dismiss, Oct. 21, 2020, Docket No. 20.)

**DISCUSSION**

**I. MOTION TO DISMISS**

**A. Standard of Review**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**B. WARN Act**

Under the WARN Act, as relevant here, "'[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order' to 'the affected employees[.]'" [2] *Day v. Celadon Trucking Servs.,*

---

[2] The parties do not dispute that LME is a covered employer or that LME's former employees did not receive 60-day notice before LME effected a covered closing.

*Inc.*, 827 F.3d 817, 826 (8th Cir. 2016) (quoting 29 U.S.C. § 2102(a)). If an employer covered under the Act orders a plant closing without giving sufficient notice, then the employer is liable to employees suffering an employment loss for back pay and lost benefits. *See Celadon Trucking*, 827 F.3d at 827; *see also* 29 U.S.C. § 2104(a).

Because the WARN Act defines "employer" as a "business enterprise," 29 U.S.C. § 2101(a)(1), district courts have consistently held that direct claims made against individuals, even owners, are not cognizable.[3] *See, e.g.*, *Warshun v. N.Y. Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013) (holding that "business enterprise" means "a corporate entity—i.e. corporation, limited partnership, or partnership—not an individual"); *see also Regal v. Butler & Hosch, P.A.*, No. 15-61081, 2015 WL 11198248, at *3 (S.D. Fla. Oct. 8, 2015) (collecting cases).

Additionally, the statute's legislative history and regulations implementing the statute both indicate that "employer" does not refer to individuals. *See* H.R. Rep. No. 100-576, at 1046, *as reprinted in* 1988 U.S.C.C.A.N. 1547, 2079 ("The Conferees intend that a 'business enterprise' be deemed synonymous with the terms company, firm or business[.]"); 20 C.F.R. § 639.3(a)(ii) ("The term 'employer' includes non-profit organizations of the requisite size . . . and public and quasi-public entities which engage in business[.]").

---

[3] The Eighth Circuit has not considered the question of whether direct claims against individuals can be asserted under the WARN Act.

As such, the Court concludes that direct claims cannot be made against the Wilseys. However, one circuit has recognized that indirect claims may be asserted against individuals under an alter-ego or veil-piercing theory. *Plasticsource Workers Comm. v. Coburn*, 283 F. App'x 181, 186 (5th Cir. 2008) ("[T]his Court permits individuals to be held liable for WARN Act violations under an alter-ego theory of liability."); *see also Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 385–88 (5th Cir. 2000) (analyzing whether to piece the corporate veil to conclude that an individual is the alter ego of a company and thus liable under the WARN Act). The Court agrees for the following reasons.

Regulating business enterprises is the purpose of the WARN Act and Congress is presumed to legislate against a background of common-law principles. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). There is no reason to presume that corporate law doctrines would not apply in the context of WARN liability, especially as the Act does not preempt such considerations. *See United States v. Bestfoods*, 524 U.S. 51, 63 (1998) ("The failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that in order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." (cleaned up)).

Further, the parties do not dispute whether indirect claims are cognizable; they only dispute whether Plaintiffs have alleged plausible indirect claims under Minnesota law. However, state law may not be the proper lens by which to assess indirect claims in

a federal question case, as is the situation here. Thus, the Court will first consider whether federal common law should be applied before addressing the plausibility of Plaintiffs' claims.

### C. Applicable Law

Generally, in federal court, "[s]tate law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (considering personal jurisdiction). However, when considering a WARN Act case, it is arguable that federal common law should be applied instead. This is what one district court concluded, *see Local 2-1971 of Pace Int'l Union v. Cooper*, 364 F. Supp. 2d 546, 565–66 (W.D.N.C. 2005), based on the reasoning in another case, *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 26–27 (1st Cir. 2000).

In *Springfield*, the First Circuit stated that when "the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision," as is the case with labor law statutes, especially because a company might be engaged in commerce across several states. *Id.* at 25–26. Additionally, the *Springfield* court concluded that the rule in federal cases may necessitate giving less respect "to the corporate form than does the strict common law alter ego doctrine" to prevent frustration of a federal statute's purpose and to prevent an alter ego from being

employed to evade federal obligations.[4]  *Id.* at 26–27, 30 (quotations omitted) (mentioning several statutes); *see also Bruhn's Freezer Meats of Chi., Inc. v. U.S. Dep't of Agric.*, 438 F.2d 1332, 1343 (8th Cir. 1971) ("The law is well settled that the corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute." (quotation omitted)).

While the Eighth Circuit has not addressed whether federal common law should be applied in WARN Act cases, it has employed federal common law in other federal question contexts when considering whether to pierce the corporate veil.  In an ERISA[5] case, the Eighth Circuit adopted a two-prong test fashioned by the Tenth Circuit, asking if (1) "there [was] such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct"; and if (2) "adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to an evasion of legal obligations."  *Minn. Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 927–28 (8th Cir. 2004) (quoting *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993)).

---

[4] The *Springfield* court also noted that state common law serves a very different purpose, tracing debts and assets rather than preventing individuals from evading statutory obligations.  *Springfield*, 210 F.3d at 30.

[5] The Employee Retirement Income Security Act of 1974.

In a later NLRA[6] case, *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 728 (8th Cir. 2008), the Eighth Circuit elaborated on the two-prong *Scanlan* test.[7] With respect to the first prong, courts are to consider the degree to which corporate legal formalities have been maintained and the degree to which individual and corporate assets and affairs have been commingled. *Id.* Courts should also consider whether the corporate form was used as a mere shell or instrumentality of an individual, and whether there has been a diversion of the corporate funds or assets to noncorporate purposes.[8] *Id.* (citation omitted).

With respect to the second prong, courts are to consider whether the corporate structure has been misused to perpetrate fraud, evade existing obligations, or circumvent a statute. *Id.* at 729. Courts should also consider whether individuals have disregarded the separateness of the corporate identity and whether this disregard led to injustice, inequity, or fraud, and whether the individuals share some level of culpability for the injustice, inequity, or fraud.[9] *Id.*

---

[6] The National Labor Relations Act.

[7] Additionally, the court noted that the Supreme Court has recognized disagreement among federal courts on the issue but has not decided whether courts should apply federal common law or borrow state law "when piercing the corporate veil to attach [individual] liability for a corporation's violation of a federal law." *Bolivar-Tees*, 551 F.3d at 728 n.3.

[8] The Court notes that, under Minnesota law, factors considered significant are almost identical to those listed in this paragraph. *See Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).

[9] The Court again notes that, under Minnesota law, factors considered significant are almost identical to those listed in this paragraph. *See id.*

Here, the Court finds that federal common law should be applied instead of Minnesota law. First, the Eighth Circuit has employed federal common law in similar federal question cases.[10] Additionally, like the Railway Labor Act in *Springfield*, the WARN Act serves to regulate labor issues; often applies to corporate entities with facilities and employees spread across several states; and federal common law would better serve to prevent alter egos from frustrating its purpose and evading its obligations. The Court will therefore employ the *Scanlan* test to assess the plausibility of Plaintiffs' claims.

**D. Analysis**

With respect to the first prong of the *Scanlan* test, Plaintiffs allege that: (1) LME was under the complete control of the Wilseys; (2) the Wilseys exercised complete domination of LME's finances, policy, and business practice; and (3) LME failed to observe corporate formalities, had its funds siphoned by its dominant shareholders, had nonfunctioning officers, and was merely a façade for the Wilseys' individual dealings. The Wilseys argue that such allegations are not sufficient to survive a motion to dismiss.

To be sure, Plaintiffs' allegations are sparse in detail. However, at the pleading stage, the Court "permit[s] claims against individual corporate defendants to proceed when plaintiffs make basic allegations as to one or more [alter-ego] factors." *C.H.*

---

[10] Furthermore, the Eighth Circuit has declined to decide whether state or federal common law should govern when a similar result would obtain under either. *See, e.g.*, *Carpenters Dist. Council of Kansas City Pension Fund v. JNL Const. Co.*, 596 F.3d 491, 495 n.6 (8th Cir. 2010); *see also supra* notes 8 & 9.

*Robinson Worldwide, Inc. v. U.S. Sand, LLC*, No. 13-1274, 2014 WL 67957, at *8 (D. Minn. Jan. 8, 2014); *see also Bank of Montreal v. Avalon Capital Grp., Inc.*, 743 F. Supp. 2d 1021, 1031 (D. Minn. 2010) (denying motion to dismiss because it was "too early in the case to dismiss this claim" where plaintiff alleged that the corporate form was "merely a façade" for individual dealings and that defendant "siphoned funds").

To meet this requirement, plaintiffs need only present allegations that, if true, would establish one or more factors of the applicable alter-ego test, and that would suffice to put defendants on notice that plaintiffs plan to assert a veil-piercing theory. *C.H. Robinson*, 2014 WL 67957, at *8; *see also MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019, 1026 (D. Minn. 2010) (finding allegations asserting that individuals siphoned funds and engaged in self-dealing to be sufficient); *Murrin v. Fischer*, No. 07-1295, 2008 WL 540857, at *22 (D. Minn. Feb. 25, 2008) (finding allegations asserting that entities were entirely controlled by individuals and were used for fraud to be sufficient).

Here, Plaintiffs allege that the Wilseys ignored corporate legal formalities, commingled individual and corporate assets by siphoning off funds, and used LME as a façade for their individual dealings—all of which, if true, would satisfy the first prong of the *Scanlan* test.[11]  Additionally, these allegations clearly demonstrate that Plaintiffs plan

---

[11] The Court notes that, if Minnesota law were applied instead, the allegations would also satisfy four of the eight *Victoria Elevator* factors. *See* 283 N.W.2d at 512.

to assert a veil-piercing theory against the Wilseys and, thus, the allegations provide sufficient notice.

With respect to the second prong of the *Scanlan* test, Plaintiffs assert that (1) the Wilseys owned Lakeville, and that its employees were terminated without proper notice before Lakeville went bankrupt; (2) afterward, the NLRB ordered LME, which had taken over Lakeville's operations, to cease and desist from creating alter egos to avoid federal obligations; and, lastly, (3) Finish Line Express, a company owned and controlled by an LME officer, took over LME's operations after LME went bankrupt. Plaintiffs allege that, as such, the Wilseys have engaged in evasive corporate conduct, and that shielding them from liability would amount to an injustice.

If true, these allegations would satisfy the second prong of the *Scanlan* test, as they would demonstrate a means of evading federal obligations by a continued use of the corporate structure to close facilities without proper notice and then declare bankruptcy, to thereby avoid having to provide back pay and lost benefits to aggrieved employees, as required under the WARN Act.[12] Furthermore, as owners of at least two of these corporations—Lakeville and LME—the Wilseys would plausibly share some level of culpability for such an inequity.

---

[12] The Court notes that such actions would also constitute an element of injustice or fundamental unfairness, as required under *Victoria Elevator*. *See id.* at 512.

In sum, the Court finds that Plaintiffs present allegations that, if true, would satisfy both prongs of the *Scanlan* test. As a result, Plaintiffs plausibly present an alter-ego theory of liability at this stage of the proceedings. Accordingly, the Court will deny Defendants' Motion to Dismiss.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEARBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 20] is **DENIED.**

DATED: May 5, 2021  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court